# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| CHRISTOPHER RYAN COLLINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. CV415-272 |
| CAROLYN COLVIN, ) | |
| Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

An application for Supplemental Security Income (SSI) was protectively filed on plaintiff Christopher Collins' behalf when he was still a minor. Tr. 287-90. Plaintiff seeks judicial review of the Social Security Agency's denial of his application for SSI benefits.

## I. GOVERNING STANDARDS

In social security cases, courts

> . . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's

decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). For evaluating disability after attaining the age of 18, the ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC to perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC,[1] age, education, and work experience. An ALJ

---

[1] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

2

may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x 878, 879 (11th Cir. 2015) (footnote added). The ALJ's determination of childhood disability is confined to the first three steps of the adult disability sequential evaluation process. *See* 20 C.F.R. § 416.924.

## II. ANALYSIS

Collins alleges disability since birth (December 3, 1992) and was 21 years old when his SSI claim was denied. Tr. 13, 31-33; 187 (protective filing for SSI benefits). He has a ninth grade education and no past relevant work experience. Tr. 31. After a hearing, the ALJ issued an unfavorable decision, which plaintiff appealed. Tr. 115-43. The Appeals Council reviewed the decision and remanded with instructions for further proceedings. Tr. 144-47. After a second hearing, the ALJ issued another unfavorable decision. Tr. 9-40. The Appeals Council denied plaintiff's request for review, making the second decision the final decision of the Commissioner for the purpose of judicial review. Tr. 1-8.

The ALJ conducted two separate analyses, as Collins claimed

disability both prior to, and since turning, age 18. He first found that Collins' kidney problems, attention deficit hyperactivity disorder (ADHD), hypertension, and disruptive behavior disorder constituted severe impairments prior to attaining age 18, but did not meet or medically equal a Listing. Tr. 17-29. Because plaintiff was therefore not disabled prior to turning 18, the ALJ then evaluated whether he had become disabled since becoming an adult. Tr. 30. He found that Collins had mild limitations in daily activities, moderate limitations in social functioning and concentration, persistence, or pace, and no decompensation in the work place. Tr. 30. The ALJ concluded plaintiff's impairments, singly and in combination, did not meet or equal a Listing. Tr. 31.

Based on the evidence of record, the ALJ found that, since turning 18, plaintiff retained the RFC for light work, limited to simple work with no interaction with the general public. Tr. 31. He determined that Collins could perform the requirements of certain representative occupations: hand packager, motel housekeeper, and routing clerk, all light, unskilled work with an SVP[2] of 2. Tr. 32. The ALJ thus

---

[2] Specific Vocational Preparation (SVP) is the amount of lapsed time required by a

concluded plaintiff was not disabled since December 2, 2010 (the day he turned 18), through the date of the decision. Tr. 32.

Collins disagrees, arguing that the ALJ failed to properly weigh medical evidence when he discounted the opinions of Dr. Obioma Nwobi (his treating pediatric nephrologist) and Dr. Stephen Chester (a consultative psychiatric examiner he saw multiple times over two years). *See* doc. 11 at 6-9. Collins argues that the ALJ compounded this error by failing to properly assess his mental RFC. *Id.* at 9-10.

## A. Weighing Medical Evidence

### 1. Dr. Obioma Nwobi

Plaintiff was treated for kidney problems beginning in June 2009, Tr. 795-826, and was diagnosed with "chronic glomerulonephritis with lesion of proliferative GN or IgA nephropathy and essential hypertension" in 2013. Tr. 982-86; *see also* Tr. 987-1022. In March 2011, his treating pediatric nephrologist, Dr. Nwobi, completed a childhood disability form and opined that plaintiff had "IgA nephropathy/nephrotic syndrome, a kidney disorder characterized by hematuria and proteinuria" and would

---

typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, App. C.

require medication and continual follow-up to "avoid progression to chronic kidney disorder." Tr. 958. Dr. Nwobi did not include any clinical findings or observations in the spaces provided for such information. *Id.* He did not opine that plaintiff met, medically equaled, or functionally equaled a Listing in the spaces provided, and he did not check the box to indicate whether he evaluated Collins' functioning in deciding whether his impairment was severe or met a Listing. Tr. 958-59. Instead, Nwobi circled the title "Nephrotic syndrome," Listing 106.06, under a printout of the elements of Listing 106.00 (Genito-Urinary System), without further explanation or findings. Tr. 964.

Despite finding Collins' kidney problems severe at Step 2, the ALJ did not find that they met or equaled a Listing at Step 3. Tr. 17. The ALJ also summarized the March 2011 disability form, but assigned no weight to Dr. Nwobi's opinion. Tr. 24. Plaintiff insists the ALJ erred by failing to assign Dr. Nwobi's opinion controlling weight. Doc. 11 at 6.

"As a general rule, 'the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not

treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists.'" *Black v. Colvin*, 2015 WL 7185506 at * 3 (S.D. Ga. Nov. 13, 2015) (quoting *McNamee v. Soc. Sec. Admin.*, 164 F. App'x 919, 923 (11th Cir. 2006), *adopted*, 2016 WL 296260 (S.D. Ga. Jan. 12, 2016)).

"The opinion of a treating physician, such as Dr. [Nwobi], 'must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'" *Phillips*, 357 F.3d at 1240 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.* (cites omitted).

The ALJ did not err in failing to assign any weight -- much less controlling weight -- to Dr. Nwobi's conclusion that plaintiff fell under the auspices of Listing 106.06 (nephrotic syndrome). Dr. Nwobi did three things: (1) diagnosed plaintiff with "nephrotic syndrome," (2) declined to opine whether Collins met any Listing, Tr. 958, and (3) circled Listing

7

106.06 "nephrotic syndrome"[3] on a page appended to the childhood disability form. Tr. 964. Dr. Nwobi's opinion that plaintiff simultaneously met, and did not meet, a Listing obviously *cannot* be credited.[4] *See* Tr. 958 (declining to opine whether plaintiff met a Listing), *id.* at 964 (apparently changing his mind).

Moreover, Dr. Nwobi's opinion as to whether Collins' kidney impairment even met a Listing is an issue reserved to the Commissioner, and a physician's opinion on the matter is not dispositive. 20 C.F.R. § 404.1527(d)(2) (issue reserved to the Commissioner); 20 C.F.R. § 416.925(d) (a diagnosis alone cannot be relied upon to meet a Listing); *see* 20 C.F.R. § 416.926(c) (evidence considered in determining whether a Listing is met). The ALJ's failure to explicitly discredit an internally contradictory non-opinion on an issue expressly reserved to the

---

[3] The Court notes that there is no signature or other identifying marks to even confirm that it was Dr. Nwobi who circled the diagnosis, *see* Tr. 964, but as both parties accept it was Dr. Nwobi's mark, the Court will accept it as part of the doctor's opinion for the purpose of judicial review.

[4] This is particularly so given the absence of *any* clinical findings or observations offered in support of Dr. Nwobi's opinion to give guidance, either way, as to his conclusion. Even were the Court to assume for the sake of argument that Dr. Nwobi intended the attached page with Listing 106.06 circled to override the preceding pages, it would be properly discredited as unsupported. 20 C.F.R. § 404.1527(c)(3); *see also* 20 C.F.R. §§ 404.1527(d)(3), (d)(4), 416.927(c)(4) (consistency of a medical opinion with the record as a whole is a factor to evaluate in giving weight to any particular medical opinion).

Commissioner was simply not error.

### 2. Dr. Stephen Chester

Plaintiff saw Dr. Chester for a consultative psychological evaluation in April 2009. Tr. 679-84. Dr. Chester provided a provisional diagnosis of conduct disorder and diagnosed Collins with ADHD and enuresis,[5] but proffered no opinion about any functional limitations imposed by these diagnoses. Tr. 684.

One year and three therapy sessions later, Dr. Chester sent a letter to the agency describing plaintiff as being consistently "very self-focused, immature and impulsive" with very marginal judgment, abnormal but concrete thought processes, and abnormal insight/judgment/impulse control. Tr. 868-70. He opined that plaintiff's ability to understand simple instructions was normal but his ability to carry out those instructions was "poor." Tr. 870. He further opined that plaintiff's ability to get along with the public, supervisors, and co-workers, deal with changes in the workplace, and make simple work-related decisions were abnormal, and that plaintiff was "somewhat likely" to decompensate or become unable to function under stress. Tr. 870-71. Dr. Chester

---

[5] Enuresis is the medical name for involuntary urination, commonly described as 'bed-wetting' in children.

diagnosed him with oppositional defiant disorder and ADHD. Tr. 870.

The ALJ noted, correctly, that Dr. Chester's 2009 opinion did not include any opined limitations imposed by plaintiff's mental impairments.[6] Tr. 25; *see* Tr. 684. Dr. Chester's 2009 opinion did not warrant any particular weight because it included only observed symptoms and diagnoses and therefore had no bearing on the disability sequential evaluation. Diagnoses and symptoms -- even ones that constitute severe impairments at step two of the disability analysis -- mean nothing if they do not cause functional limitations. *See Moore*, 405 F.3d at 1213 n.6 ("the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard"); *Wright v. Commissioner of Social Security*, 327 F. App'x 135, 137 (11th Cir. 2009) (ALJ need not include diagnoses in hypotheticals to VEs when they cause no functional limitations). That's because the agency's disability definitions require that severe health problems preclude substantial gainful activity, not that

---

[6] Plaintiff argues that "the ALJ found that Dr. Chester did not have an opinion at all at the first consultative evaluation." Doc. 11 at 8 (citing AR 25, 130). As discussed herein, this misrepresents the ALJ's decision. Rather, the ALJ found that "Dr. Steve Chester did not provide any opinions as to [plaintiff]'s abilities or limitations in his initial opinion." Tr. 25. This is very different from "not hav[ing] an opinion at all."

they simply exist. *See* 20 C.F.R. §§ 404.1505(a); 404.1520(a)(4)(iv).

Dr. Chester's 2010 opinion, however, did opine to functional limitations imposed by plaintiff's mental impairments—namely, that Collins has difficulty carrying out simple instructions, getting along with the public, supervisors, and co-workers, dealing with changes in the work setting, and making simple work-related decisions. Tr. 870 (see checked boxes). The ALJ found that Dr. Chester's 2010 opinion warranted "little weight" because of his limited treatment history[7] and lack of "any explanation for some of his assessments." Tr. 25. Plaintiff contends this was error.

The form Dr. Chester filled out is a check-box format, with options for either "normal," "abnormal," or "markedly abnormal," and a directive to explain any "abnormal or limited" opinions. *See* Tr. 869-71. The only explanation provided for any abnormal opinion was that plaintiff's

---

[7] Collins argues that Dr. Chester's treating history, comprising an initial evaluation and three follow-up therapy sessions, made him a treating physician and entitled him to greater weight than a consultative examiner. Doc. 11 at 8. The Commissioner argues his treating relationship with plaintiff was "far from ongoing," Doc. 12 at 10 (citing 20 C.F.R. §§ 416.902, 416.927(c)), and that because he was not a treating source, the ALJ did not need "good cause" to reject his opinion, *id.* (citing *Phillips*, 357 F.3d at 1240-41). Regardless of whether he is properly considered a treating source, as discussed further herein, the ALJ articulated "good cause" for finding Dr. Chester's opinion less than fully credible. Therefore, the Court need not determine whether Dr. Chester became a treating source or remained a consultative examiner, as the ALJ met the higher burden for discounting his opinion.

"insight/judgment/impulse control' was "very poor," his diagnoses were "ODD; ADHD, combined type," and that his ability to "understand" simple instructions was "normal" but his ability to "carry-out" those instructions was "prognosis poor." Tr. 870.

An ALJ may discount a physician's opinion, including that of a treating physician, when the opinion is conclusory, the physician does not provide objective medical evidence to support his opinion, the opinion is inconsistent with the record as a whole, or the evidence otherwise supports a contrary finding. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Phillips*, 357 F.3d at 1240-41. Stand-alone form questionnaires or "checklist" opinions generally are disfavored. *See Foster v. Astrue*, 410 Fed. App'x 831, 833 (5th Cir. 2011) (physician's use of "questionnaire" format typifies "brief or conclusory" testimony); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best"); *Davis-Augustin v. Colvin*, 2015 WL 5042752 at *7 (N.D. Fla. Aug. 26, 2015) *(*"preprinted forms . . . do not constitute persuasive evidence of the validity of the opinions expressed therein"); *Hammersley v. Astrue*, 2009 WL 3053707 *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that

check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions"). *Cf. Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014) (ALJ erred by rejecting check-box forms that "reflected and were entirely consistent with the hundreds of pages of treatment notes").

Dr. Chester's opinion was properly discounted as conclusory and unsupported by explanation -- the doctor provided *no* explanations for the vast majority of his opined functional limitations, despite the form's explicit instructions and the spaces provided for furnishing such explanations. *See* Tr. 869 (instructions including "**Important!** Please check the boxes as appropriate and if abnormal or limited, please explain").

The only explained functional limitation, that plaintiff has "poor" ability to carry out simple instructions, is explicitly contradicted by other evidence in the record. *See, e.g.,* Tr. 27 (concluding plaintiff had "less than marked" limitation in attending and completing tasks" based, in part, on Ms. Edenfield's report[8] that Collins had the ability to complete

---

[8] The ALJ also properly evaluated the testimony of plaintiff's teacher, Ms. Edenfield, in determining plaintiff's actual functional limitations. *See* 20 C.F.R. §§ 416.924a(a)(2)(iii), (b)(3), (7) (the agency "will" consider school records, including

his work but "goofed off" and simply didn't care enough to complete his work). The unexplained functional limitations, including the limitation on interacting with the public, coworkers, or supervisors, are also belied by the overall record. *See, e.g.,* Tr. 27-28, 344, 346-48, 380. The ALJ did not err by discounting Dr. Chester's conclusory, unsupported check-box 2010 opinion.

**B. RFC Assessment**

The ALJ concluded that Collins retained the RFC to perform light work and should be limited to simple work with no interaction with the general public.[9] Tr. 31. As discussed above, plaintiff's contention that the ALJ erred by not including Dr. Chester's opined limitations is without merit. But he also argues that the ALJ erred by failing to incorporate his own findings of "moderate limitations" in social functioning, which "would clearly impact [his] dealings with the general public, co-workers, and supervisors," and in concentration, persistence, or pace, which "would preclude any detailed work or time-sensitive work." Doc. 11 at 10 (citing Tr. 25 (ALJ's findings of moderate limitations in these areas)).

---

standardized tests and statements from teachers, in determining the severity of a child's "functional limitations").

[9] Collins only challenges the ALJ's RFC assessment as it relates to his mental functional limitations. *See* Doc. 11 at 9-10.

This argument also fails.

The ALJ is entitled to formulate a RFC and resolve any ambiguity or inconsistency in the medical evidence, 20 C.F.R. §§ 416.927(d)(2), 946(c), based on the *entire* record, 20 C.F.R. § 416.945(a)(3) (the RFC is based on all the relevant evidence, including diagnoses, treatment, observations, and opinions of medical sources, as well as witness testimony). Based on his analysis of plaintiff's mental functioning under 20 C.F.R. § 416.920a, the ALJ then determines the impact of those finding on the plaintiff's ability to work. 20 C.F.R. § 416.920a(d). This is an area explicitly reserved to the ALJ, including determining whether "moderate limitations" in social functioning and concentration, persistence, or pace impact *more* than plaintiff's ability to perform simple work with limited contact with the general public. *Id.*

The ALJ did not err in his RFC assessment or hypothetical to the VE, because he adequately accommodated Collins' limitation in social functioning when he imposed a restriction on contact with the general public, *see Syed v. Comm'r of Soc. Sec.*, 441 F. App'x 632, 634 (11th Cir. 2011) ("occasional" need to "have contact with" the general public addresses "moderate difficulties in maintaining social functioning"), and

"implicitly accounted for [his] limitations in concentration, persistence, and pace when he imposed a limitation of simple work." *Lee v. Comm'r of Soc. Sec.*, 551 Fed. App'x 539, 541 (11th Cir. 2014) (relying on *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180-81 (11th Cir. 2011)).[10]

## III. CONCLUSION

Because the ALJ properly evaluated the medical opinion evidence and assessed plaintiff's mental health functioning, the Commissioner's final decision should be **AFFIRMED.**

**SO REPORTED AND RECOMMENDED**, this __22nd__ day of September, 2016.

*/s/ G.R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[10] Moreover, as noted by the Commissioner, plaintiff does well when compliant with his ADHD medications. Doc. 12 at 14 (citing Tr. 22, 623, 625. 627, 630, 632, 634, 827, 829, 831, 834, 836, 838, 840, 842, 844, 846, 848, 850, 866). An "ALJ's hypothetical need not include a claimant's asserted impairments that are not supported by the medical evidence, or that are controlled or alleviated by medication." *Vesy v. Astrue*, 353 F. App'x 219, 225 (11th Cir. 2009). The ALJ was not required to impose further restrictions on Collins' ability to perform simple work than those supported by the evidence.